UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| ELMER HANDSHOE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY BERRYHILL, ACTING ) <br> COMMISSIONER OF SOCIAL SECURITY, ) <br> ) <br> Defendant. ) <br> ) | Civil No. 7:15-cv-102-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

The Plaintiff, Mr. Elmer Handshoe, brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security, who denied Handshoe's claim for disability insurance benefits.  The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Handshoe's Motion for Summary Judgment [R. 7] and will GRANT the Commissioner's [R. 8.]

**I**

Handshoe filed his application for benefits on October 1, 2012, alleging disability beginning on November 10, 2011, due to multiple physical impairments.  A video-hearing was conducted before Administrative Law Judge ("ALJ") Michele Kelley on May 15, 2015, presiding from Seven Fields, Pennsylvania. [Tr. 10]   At the hearing, Gina Baldwin, a vocational expert, testified. [Tr. 41.]

Handshoe was fifty-two years old as of the date of the hearing.  [Tr. 61.]  He has a GED and previously worked as a "blastman assistant and a contract worker for a gas company, driving trucks and doing odd jobs for his employer." [R. 8 at 2.]  Handshoe alleges disability due to a

slew of physical impairments. He complains of back pain; shoulder pain that makes him unable to raise his shoulders above his head; acid reflux; and stomach and bowel issues. [R. 7-1 at 2.]

In evaluating a claim of disability, the ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). The plaintiff has the ultimate burden of proving compliance with the first four steps. *Kyle v. Comm'r Of Soc. Sec.*,

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

609 F.3d 847, 855 (6th Cir. 2010).   Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled."  20 C.F.R. § 404.1520(f).

In this case, the ALJ issued his written decision on July 21, 2014.  [Tr. 10-18.]  At Step 1, the ALJ found that Handshoe had not engaged in substantial gainful activity since the alleged onset date of November 10, 2011.  [Tr. 12.]  At Step 2, the ALJ found that Handshoe had the following severe impairments:  "chronic low back pain, bilateral shoulder internal derangement, and gastroduodenitis."  [*Id.*]  Additional impairments were found to not be severe: "right knee pain, hypertension, hyperlipidemia, gastroesophageal reflux disease (GERD), hiatal hernia, renal cysts, renal stones, hepatic steatosis, and pre-diabetes."  [*Id.*]  At Step 3, the ALJ concluded that Handshoe does not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526)," so the analysis continued to the next step.  [Tr. 14.]  At Step 4, the ALJ concluded that Handshoe had an RFC to "perform medium work (lift/carry/push/pull 50 pounds occasionally and 25 pounds frequently) as defined in 20 CFR 404.1567(c) . . ."  [Tr. 14.]  The ALJ noted the following specific limitations:

> [H]e can stand/walk six hours total in an eight-hour workday; can sit six hours total in an eight-hour workday; cannot perform overhead reaching activities with either upper extremity; and must avoid concentrated exposure to extreme cold, humidity, vibration, and hazards (unprotected heights, uneven surfaces, or dangerous machinery).

[Tr. 14.]  With these limitations in mind, the ALJ determined that Handshoe was not capable of performing any past, relevant work.  [Tr. 16.]  Finally, at Step 5, the ALJ adopted the opinion of the vocational expert, that there were a significant number of jobs in the national economy that Handshoe could perform.  [Tr. 17.]  As a result, the ALJ concluded that Handshoe was not

3

disabled. [Tr. 18.] The Appeals Council found no reason for review. [Tr 1.] Handshoe now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Handshoe argues that the Commissioner's decision "is not based on substantial evidence as required by 42 U.S.C. § 405(g) and that he Commissioner erred as a matter of law in determining that he is not entitled to DIB benefits for the reasons set forth herein." [R. 7-1 at 1.] Handshoe has made the following arguments:

1. "The ALJ gave no weight to the treating physician's RFC." [*Id*. at 8.]

2. The non-examiner opinion's must be based on substantial evidence. [*Id*. at 11.] "The ALJ gave great weight to Dr. Mukherjee, the non-examining physician," who did not "perform a thorough review of the available medical record." [*Id*.]

3. "The ALJ failed to include all the restrictions and limitations in the RFC and then failed to adequately describe the claimant in the hypothetical to the vocational expert." [*Id*. at 12.]

**A**

Handshoe complains that the ALJ gave no weight to his treating physician's RFC. [Tr. 16.] Dr. Ira Potter, Handshoe's treating physician, treated the client from August 2009 on a continuous basis. [R. 7-1 at 8.] Dr. Potter ordered various testing for Handshoe and referred him to additional doctors, one of whom performed surgery on Handshoe's shoulder. [*See id*. at 9.]

The Social Security Administration's regulations explain to claimants that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(d)(2). The other factors which must be considered when deciding whether to give the treat physician's opinion controlling weight include: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship,

the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), d(3)-d(5); 416.927(d)(2)(i)-(ii), d(3)-d(5).

The regulations also contain a clear procedural requirement that the ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2).

Contrary to Handshoe's assertion, the ALJ did explain why he did not afford any weight to Dr. Potter's opinion. Dr. Potter asserted that Handshoe could not work an 8 hour day, could lift no more than 10 pounds, would be absent from work more than four days per month, and had a variety of postural and environmental limitations. [Tr. 415-420.] The ALJ asserted that these findings were "inconsistent with his treatment records that show vague lumbar signs and normal neurological findings." [Tr. 32.] The ALJ detailed Dr. Potter's responses to Handshoe's various complaints and found that Dr. Potter reported Handshoe's various infirmities were being controlled with a successful shoulder surgery and medication for his bowel problems, which Handshoe had failed to discuss at length with Dr. Potter. [Tr. 14.] Further, the ALJ noted that though Handshoe complained of lower back back, he has not had surgery, received no injections, had no physical therapy or chiropractic care. [Tr. 14.] The ALJ also found that Handshoe "was only partially credible," because "[m]ost of his impairments are controlled with medications or his current treatment regimen." [Tr. 16.] Because the ALJ provided adequate reasons for discounting Dr. Potter's evaluation of his patient, this Court declines to overrule the ALJ's decision to not consider his recommendation.

**B**

Handshoe complains that the non-examining physician, Dr. Mukherjee did not "perform a thorough review of the available medical record" [R. 7-1 at 11.] and his opinion could not have been based on substantial evidence in contravention of the rule set out in *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013), holding that "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.' The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling."

Handshoe relies on the standard used in *Jones v. Astrue*, 808 F. Supp. 2d 993, 996 (E.D. Ky. 2011), where the ALJ relied on a non-examining physician's evaluation when that physician had not examined the complete file of the claimant. However, as this Court has already held, this aspect of the holding in *Jones* is no longer good law. Numerous cases in this Circuit have already reached that conclusion. See, e.g., *Helm v. Comm'r of Soc. Sec. Admin*, 405 Fed.Appx. 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record."); *Fry v. Comm'r of Soc. Sec.*, 476 Fed.Appx. 73, 75 (6th Cir. 2012) (rejecting claimant's argument that non-examiner's "opinion was inadequate because it was based on a review of the record before she began treatment with [another doctor]," and holding that "the ALJ properly considered [the non-examiner's] report as opinion evidence."); *Keith v. Colvin, 2016 WL 1212068*, at *5 (M.D. Tenn. Mar. 29, 2016) ("Despite [the claimant's] reliance on *Jones v. Astrue* . . . for the proposition that the opinion of a non-examining expert who does not examine a complete record does not comprise substantial evidence, this court is bound only by the Sixth Circuit precedent

7

set forth in *Helm* and *Fry*."); *Skaggs v. Colvin*, 2016 WL 782309, at *5 (E.D. Ky. Feb. 26, 2016) ("[W]hile the District Court in Jones seems to suggest that, when an ALJ affords more weigh to a non-examining physician over an examining physician, only the most recent opinions are credible since they account for all preceding opinions, the Sixth Circuit has established that no such completeness rule or requirement exists."); *Price v. Colvin*, 2016 WL 782259, at *3 (E.D. Ky. Feb. 26, 2016) ("*Jones* relied on a Social Security Ruling that did not create a definitive rule, and, more importantly, the Sixth Circuit has made it clear that no such rule exists."). In the absence of any such completeness rule, the ALJ's only obligation is to provide "good reasons" for giving greater weight to the non-examiners' opinions. *Helm*, 405 Fed.Appx. at 1000.

Here, the ALJ gave sufficient reasons for ascribing "significant weight" to Dr. Mukherjee's opinion. [Tr. 16.] The ALJ explained that Dr. Mukherjee's opinion was "based on a thorough review of the available medical record . . . [and his] opinion [was] internally consistent and well supported by a reasonable explanation and the available evidence." [Tr. 16.] The ALJ considered the opinion of Dr. Nutter and Dr. Potter as well and concluded both should be given less weight than Dr. Mukherjee's opinion. The ALJ stated that Dr. Nutter's opinion was "so vague" to be "not helpful in determining a specific residual functional capacity assessment," however, the ALJ did afford "great weight to Dr. Nutter's objective clinical findings." [Tr. 16.] The ALJ's reasons for affording Dr. Potter's opinion little weight were outlined in the previous section.

Because there is no requirement in the Sixth Circuit to examine a complete medical record and the ALJ's discretionary determination to ascribe significant weight to Dr. Mukherjee's opinion is supported by substantial evidence, this Court finds in favor of the Defendant on this argument.

8

**C**

Handshoe's final argument alleges that the ALJ "failed to include all the restrictions and limitations in the RFC and then failed to adequately describe the claimant in the hypothetical to the vocational expert." [R. 7-1 at 12]

The ALJ posed several hypotheticals to the vocational expert related to Handshoe and his abilities, but did not include information about Handshoe's gastroduodenitis. [See Tr. 57-59.] The Sixth Circuit has held that it is not necessary for a vocational expert to be given a list of a claimant's medical conditions. Rather, a "hypothetical question need only reference all of a claimant's limitations." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). The vocational expert does not make the decision on what medical conditions would make work difficult for the claimant, but only uses the "residual functional capacity," along with "age, education, and work experience." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Since the ALJ determines the claimant's residual functional capacity, the findings of the ALJ will dictate what hypothetical questions should be asked. In fact, the ALJ found Handshoe "only partially credible" and that his "allegations of . . . acid reflux, stomach, and bowels [sic] problems are deemed excessive. [Tr. 16.] Since the ALJ did not find the claimant credible as to his gastroduodenitis limitations, she did not include those limitations in the hypotheticals posed to the vocational expert and was not required to do so.

The first half of this argument, that restrictions for gastroduodenitis were not included in the ALJ's RFC has been addressed above. The ALJ gave significant weight to Dr. Mukherjee's opinion and did not find Handshoe credible as to his bowel problems, particularly since Handshoe had made no recent complaints to his primary care doctor, Dr. Potter. [*See* Tr. 16.] Because the ALJ did not find claimant credible as to his limitations due to gastroduodenitis, the

ALJ was not required to include these limitations in her RFC. Therefore, this Court finds in favor of the Defendant on this argument as well.

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Handshoe not disabled is supported by substantial evidence. Even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably supports her conclusion. *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

1. Handshoe's motion for Summary Judgment [R. 7] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [R. 8] is **GRANTED**; and

3. **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

This the 23rd day of March, 2017.

Gregory F. Van Tatenhove
United States District Judge